AO-106 (Rev: 06/09)-Application for Search Warrant

# FILED

## UNITED STATES DISTRICT COURT

for the

**JUN 0 5 2024**

Northern District of Oklahoma

**Heidi D. Campbell, Clerk
U.S. DISTRICT COURT**

In the Matter of the Search of
A blue Apple iPhone cellphone in a black leather case,
Currently Stored at the Tulsa Police Department Robbery
Unit Office

Case No. ___24-mJ-399-SH___

**FILED UNDER SEAL**

### APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment "A"

located in the __Northern__ District of __Oklahoma__ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| **18 U.S.C. § 1951** | **Obstructing, Delaying, and Affecting Commerce by Robbery** |

The application is based on these facts:
**See Affidavit of Kayla Johnson, attached hereto**.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of ____ days (give exact ending date if more than 30 _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

TFO Kayla Johnson, FBI
*Printed name and title*

Subscribed and sworn to by phone.

Date: __6|5|24__

City and state:  __Tulsa, Oklahoma__

_____
*Judge's signature*

Susan E. Hunstman, U.S. Magistrate Judge
*Printed name and title*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **In the Matter of the Search of**<br>**A blue Apple iPhone cellphone in a**<br>**black leather case, Currently Stored at**<br>**the Tulsa Police Department Robbery**<br>**Unit Office** | Case No. _____ |

### Affidavit in Support of an Application
### Under Rule 41 for a Warrant to Search and Seize

I, Detective K. Johnson, being first duly sworn under oath, depose and state:

### Introduction and Agent Background

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a federal law enforcement officer as defined under Rule 41(a)(2)(C) and am authorized to request this search warrant because I am a government agent who is engaged in enforcing federal criminal laws and I am within the category of officers authorized by the Attorney General to request such a warrant. I am a Part Time TFO with the Federal Bureau of Investigation (FBI) and have been since February 2023. I am currently assigned to the Tulsa Police Department, Robbery Unit. As a Detective and Part Time TFO, my duties include, but are not limited to, investigating violations of federal criminal law. I have received formalized training and I have participated in

many aspects of criminal investigations, including conducting interviews, collecting, and reviewing evidence, conducting physical and electronic surveillance, working with informants, and executing search and arrest warrants.

3. I am familiar with the facts and circumstances of this investigation. The facts set forth in this affidavit are based on my personal observations, knowledge obtained from other law enforcement officers, my review of documents related to this investigation, conversations with others who have personal knowledge of the events and circumstances described herein, and a review of open-source information including information available on the Internet. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact I or others have learned during this investigation.

4. Based on my training, experience, and the facts set forth in this affidavit, there is probable cause to believe that evidence of violations of 18 U.S.C. § 1951 Obstructing, Delaying, and Affecting Commerce by Robbery, will be in the electronically stored information described in Attachment B and is recorded on the device described in Attachment A.

### Identification of the Device to be Examined

5. The property to be searched is a blue Apple iPhone in a black leather case, hereinafter the "Device." The Device was found on MORROW's person during arrest and is currently located at the Tulsa Police Department Robbery Unit Office.

6. The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## Probable Cause

7. On May 3, 2024, at 10:46 pm, a black male suspect entered the Terp Town Dispensary located at 4521 North MLK Boulevard in Tulsa, OK. This location is within the Northern District of Oklahoma and within the boundaries of the Cherokee Nation.  The suspect produced a silver revolver and demanded money.  The employee working at the time, F.J., stated the suspect fired a shot from the gun during the robbery. F.J. stated that he emptied the cash register and proceeded to the safe at the direction of the suspect and loaded marijuana product into a bag.  The suspect then fled out the back door of the business to a waiting red pickup truck that was parked at a nearby car wash.



(Suspect later identified as Ronald Buckley Jr. with a silver revolver; on 5/3/24 Terp Town Dispensary surveillance)

3

8. On May 6, 2024, I was assigned this case and started reaching out the owner of the dispensary, W.L., to obtain video surveillance of the incident.

9. I know that dispensaries engage in the sale of controlled substances which are regulated by the federal government and a robbery of a dispensary affects interstate commerce. Dispensaries are known to carry merchandise that is manufactured and imported from locations outside of the state of Oklahoma such as tobacco products and smoking paraphernalia. Customers of dispensaries use United States currency to purchase cannabis and other merchandise.

10. While waiting for the video, W.L. sent several still shots from the surveillance video that showed the suspect without a mask and his face is clearly visible. W.L. also provided the Oklahoma Department of Corrections Offender page for Ronald Buckley Jr. and stated "the streets" told him Buckley Jr. was the suspect. I know from my training and experience, people providing information to violent crimes will sometimes wish to remain anonymous for fear of retaliation.

11. Buckley Jr.'s most recent picture from DOC was taken on May 31, 2023, and very closely resembled the suspect.



(5/3/24 Terp surveillance still sent to TPD by W.L.)



(DOC Mugshot of Buckley send to TPD by W.L.)

4

12. On May 7, 2024, I was advised that W.L. and B.W. were robbed at gunpoint inside the same dispensary overnight.  B.W. lives with W.L. and they consider each other husband and wife. W.L. called 911 at 11:59 pm on May 6, 2024, and stated that he was robbed by two black male suspects, and they took his wife's Kia Optima.  W.L. also advised the suspects took the DVR system from the dispensary. When asked what happened at the scene, W.L. stated he was ambushed when he took the trash out by the black males and forced back inside the dispensary.  He stated the suspects made him and his wife lay on the floor as they took merchandise and money from the safe and then fled in his B.W.'s car. Among the items taken was a DVR which contained security camera footage. Based on my training and experience, individuals who commit robberies will attempt to remove security camera footage. It is reasonable to believe that the second robbery is related to the first and that Buckley Jr. was attempting to cover his steps by taking the DVR from the business. It is common for people to carry cell phones on their person; these devices may contain data relevant to this second robbery.

13. On May 8, 2024, I showed the dispensary employee, F.J., a six-person photo lineup that included a picture of Buckley Jr. and five other pictures with people that had similar features, were of the same age range, and had similar facial hair.  F.J. looked through the pictures one time and stated, "it's number 2," which was the picture of Buckley Jr.  F.J. signed the picture of Buckley Jr. that he positively identified as the suspect who robbed him.

14. On May 8, 2024, Detective Stewart and I stopped by the dispensary and spoke with B.W. She stated that she saw a post on the Tulsa County Sheriff's Office

5

Facebook page that appeared to be the same suspect and suspect vehicle as their robbery.  I was able to look at the post and recognized the person as Buckley Jr. and the truck was consistent with the truck captured on surveillance footage at Terp Town Dispensary on May 3, 2024, robbery. Det. Stewart learned TCSO was investigating a robbery that happened on the same night, May 3, 2024, at 9:00 pm at the Trap Cannabis Dispensary located at 1700 East 56th Street.  This location is 2.6 miles from Terp Town Dispensary. The person working at the dispensary reported a black male knocked on the door and was told the store was closed. At that point the man forced his way into the store while brandishing a silver revolver. The owner of the store pulled out a pistol and shots were exchanged between the parties. The male left without anything in a red truck driven by another individual.  TCSO was able to recover video surveillance still shots that shows Buckley Jr. with a revolver in his hand that is consistent with the one captured on video from the Terp Town Dispensary robbery.



(5/3 Trap surveillance still provided to TPD showing Buckley brandishing a Silver Revolver)

15. The footage also captured Buckley Jr. leaving in a four-door red truck with the dark hood that is like the truck from the Terp Town Dispensary. The driver, later identified as Terrance MORROW, is pictured below wearing a white T-shirt.



(5/3 Trap surveillance sent to TPD of 4-Door Chevrolet Pickup, with black hood and driver later identified as MORROW)

16. TCSO Detectives advised during their robbery the dispensary employee armed himself with a gun and began returning shots at Buckley Jr. after he fired shots at them.  TCSO stated they believe the red truck will possibly now have multiple bullet holes in the passenger side.

17. A search of Buckley Jr.'s criminal history revealed he has felony criminal convictions, meaning a crime that carries punishment for more than one year, for the following:

 a. Knowingly Receiving, Possessing or Concealing a Stolen Vehicle, Case No. CF-2009-679, in the District Court of Bryan County, State of Oklahoma, on October 2, 2018;

 b. Robbery or Attempted Robbery with a Dangerous Weapon, Case No. CF-2010-3348, in the District Court of Tulsa County, State of Oklahoma, on November 11, 2011; and

7

    c. Robbery First Degree, Case No. CF-2010-3247, in the District Court of Tulsa County, State of Oklahoma, on November 11, 2011.

18. On May 9, 2024, I completed an Out of Custody Affidavit for Buckley Jr.'s and walked it over the Tulsa County District Attorney's Office for review. At that time, the Tulsa County DA's Office advised Buckley Jr. had filed his native status as a member of the Muscogee Creek Nation on July 20, 2021.

19. I have received verification from the Muscogee Creek Nation that Buckley Jr. is an enrolled member.

20. On May 10, 2024, I obtained a signed and sealed criminal complaint and arrest warrant for Ronald Buckley Jr. I also obtained a signed search and seizure warrant for Buckley Jr.'s cell phone to include live pings and historical data.

21. After monitoring the live pings since May 10, 2024, I was able to determine the cell phone was active and regularly traveled to and from 1507 North Florence Avenue in Tulsa.

22. On May 13, 2024, at approximately 9:30 am, Fugitive Warrants Detective S.D. observed Buckley Jr. exit the residence at 1507 North Florence Avenue. Buckley Jr.'s cell phone was also showing to be at the house when he was observed there. Buckley Jr.'s went back inside the residence.

23. On May 13, 2024, I obtained a signed search warrant for Buckley Jr.'s residence at 1507 North Florence Avenue, Tulsa. While waiting for the warrant to be singed, Buckley Jr. exited the residence and was arrested at 11:48 am.

24. Detectives served the signed search warrant at the residence and recovered the pants worn in the Tulsa and TCSO robberies and the shirt worn in the TCSO robbery. No firearm was found, and it is reasonable to believe the firearm is still in the suspect vehicle or with the second suspect.

25. On May 13, 2024, at 7:35 pm, I was contacted by the Haskell County Sherriff's Office who advised they had information related to the Tulsa robberies.

26. Deputy Bray of the Haskell County Sheriff's Office advised he had information that Terrance MORROW was involved in the Tulsa robbery and had the evidence, to include marijuana and the gun, at his residence. Deputy Bray drove by MORROW's known residence at 185 West Brown Street, Kinta, and observed the red four door Chevrolet Silverado with a black hood parked in the driveway. I sent Deputy Bray a picture of the suspect vehicle from the TCSO robbery, and he confirmed it was the same truck.

27. Deputy Bray advised while conducting surveillance on MORROW's residence, he observed MORROW park the suspect vehicle in a wooded area near the residence in an apparent attempt to hide it from view. Deputy Bray observed this suspicious behavior just a few hours after Buckley Jr.was booked into the Tulsa County Jail and began making phone calls. It is reasonable to believe that Buckley Jr. was able to get word to MORROW and tell him to hide the vehicle because Detectives knew it was involved in the robberies. It is believed this call data may be contained on MORROW's cell phone.

9

28. On May 14, 2024, I sent Deputy Bray a picture of the black male suspect who was seen on video surveillance footage from the gas station located next door to the Terp Town Dispensary. This image is included below, and shows the suspect wearing a white T-shirt, Pittsburgh Pirates hat, and a gold wristwatch. The suspect can be seen exiting the suspect vehicle-a red four door Chevrolet Silverado with black hood- and enter the store approximately 15 minutes before the robbery. Deputy Bray was able to positively identify MORROW as the suspect driving the getaway vehicle in both the TCSO robbery and Tulsa robbery. Below is a picture of MORROW when he was arrested on November 13, 2023, in Tulsa for traffic offenses, and the surveillance still from the nearby gas station on May 3, 2024, showing MORROW wearing clothes consistent with what the driver is seen wearing earlier on Trap Cannabis surveillance.

     

(11/13/23 Mugshot of Terrance MORROW)     (5/3/24 surveillance: identified as MORROW by Dep. Bray)

29. A search of Oklahoma State Courts Network website (OSCN.net) shows that Terrance MORROW was charged with a traffic infraction in Tulsa County on January 21, 2024, while operating a 2012 Chevrolet Pickup Truck consistent with the vehicle utilized in the May 3, 2024, robberies at Trap Cannabis, Terp Town Dispensary.

MORROW later pled guilty to the traffic infraction involving the Chevrolet Pickup truck under Case No. TR-2024-806.

30. On May 14, 2024, I authored a search warrant for MORROW'S residence. Deputy Bray provided the address and confirmed that the address is where he saw MORROW at yesterday with the suspect vehicle.

31. On May 15, 2024, the search warrant for MORROW'S residence was signed by a Judge in the Eastern District of Oklahoma.  FBI Agents and Detectives with the Tulsa Police Department Robbery Unit drove to Kinta, Oklahoma to serve the warrant.

32. On May 21, 2024, I obtained a signed and sealed criminal complaint and arrest warrant for MORROW in Case No.: **24-mj-00374-CDL**.

33. On May 22, 2024, Detectives with the Tulsa Police Department Robbery Unit, FBI Agents from the Northern and Eastern District, Haskell County Sherriff's Office Deputies, and Choctaw Nation Police met in Kinta, Oklahoma to brief the search warrant for MORROW's residence.  As Officers were briefing the warrant, MORROW's was seen driving near the residence in his red four door Chevrolet Silverado with black hood.  A traffic stop was conducted, and MORROW was arrested.  MORROW's cell phone was recovered from his person during his arrest and is the item to be searched in Attachment A. People carry cellphones on their person, and it is believed MORROW would have been in possession of this device from May 3, 2024, until his arrest, and may provide important evidence to the robberies, such as locational, transactional, and locational data.

11

34. MORROW's vehicle was towed to T&W Wrecker, located at 10350 OK-9, Stigler, Oklahoma.

35. On May 22, 2024, after MORROW was arrested, the signed search warrant for MORROW's residence was served.  I recovered the hat MORROW was seen wearing on video surveillance footage at the convenience store next door to Terp Town, the gold in color watch seen on video surveillance footage, and the title to the red Chevrolet Silverado with black hood that MORROW was driving.

36. The device is the cell phone recovered from MORROW's person during arrest which is currently in the lawful possession of the Tulsa Police Department. It came into the Tulsa Police Department's possession in the following way: During the arrest of MORROW at the traffic stop.

37. The Device is in storage at the Tulsa Police Department Robbery Unit Office. In my training and experience, I know that the Device has been stored in a way its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the Tulsa Police Department.

38. Following a Detention Hearing on May 28, 2024, the Honorable Christine D. Little, United States Magistrate Judge released MORROW with conditions.

39. The Honorable Mark T. Steele, United States Magistrate Judge found probable cause was established at MORROW's Preliminary Hearing on the complaint, held on May 29, 2024.

40. On June 3, 2024, a Federal Grand Jury indicted MORROW, charging him with two counts of violations of 18 U.S.C. § 1951, and one count of violations of 18 U.S.C. § 924 (c)(1)(A)(iii), for his involvement in the May 3, 2024, robberies at Trap Cannabis and Terp Town Dispensary.

### Technical Terms

41. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a.  Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from

the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic films. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

14

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments, or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various

15

types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f.  Pager: A pager is a handheld wireless electronic device used to contact an individual through an alert, or a numeric or text message sent over a telecommunications network. Some pagers enable the user to send, as well as receive, text messages.

g.  IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

16

h. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

42. Based on my training, experience, and research, I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, and a GPS navigation device. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

### Electronic Storage and Forensic Analysis

43. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period on the device. This information can sometimes be recovered with forensics tools.

44. Your affiant knows that cellular telephones are often equipped with digital cameras and those phones possess the capability to transmit and/or store electronic images. Your affiant knows that in many cases, cellular telephones maintain photographs of illegal activities, including robbery and possession of firearms by felons. These photos are sometimes stored in their cellular phones and often are transmitted or sent from one electronic media device to another. Your affiant also knows that cellular phones may also contain notes regarding potential illegal acts that are recorded by the

17

subject who possesses the electronics. Furthermore, your affiant knows that text messages and emails are often used by two or more persons to communicate information regarding illegal activities, between principals and co-conspirators of those crimes.

45. Your affiant knows that cellular telephones are utilized by most individuals in the United States and have become a staple of communication between individuals using text messaging, visual and audible communications (telephone calls and FaceTime type communications) as well as applications like "WhatsApp" and "GroupMe." Additionally, individuals utilize their cellular devices to take pictures, keep notes, as a GPS (global positioning System) device, and even to conduct illicit or illegal activity. Communications on phones are kept for long periods and transferred from one phone to another when replaced. This is done using Cloud storage and direct transfer conducted at the time of purchase or by the individual themselves. Individuals utilize this method as not to lose data that is stored on the phone such as contacts, photos, notes, and other important information to the individual. This data includes contacts used to conduct illegal activities to include robbery and possession of a firearm by a felon.

46. Cellular telephones are often used to facilitate offenses and allow criminals to maintain communication with each other before, during and after the commission of offenses. I am aware that cellular telephones have the capacity to store a vast amount of information, including but not limited to: telephone numbers, voice messages, text messages, e-mail, photographs, videos, address books, records, phone call histories,

contact and other information. This information may be contained on the cellular telephone.

47. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely

reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

48. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection to determine whether it is evidence described by the warrant.

49. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

50. *Methods of examination.* In conducting this examination, law enforcement personnel may use various methods to locate evidence and instrumentalities of the crime(s) under investigation, including but not limited to undertaking a cursory

inspection of all information within the Device. This method is analogous to cursorily inspecting all the files in a file cabinet in an office to determine which paper evidence is subject to seizure. Although law enforcement personnel may use other methods as well, particularly including keyword searches, I know that keyword searches and similar methods are typically inadequate to detect all information subject to seizure. As an initial matter, keyword searches work only for text data, yet many types of files commonly associated with stored cellular device data, such as pictures and videos, do not store as searchable text. Moreover, even as to text data, keyword searches cannot be relied upon to capture all relevant communications associated with a cellular device, as it is impossible to know in advance all the unique words or phrases investigative subjects will use in their communications. Consequently, often many communications in cellular device data that are relevant to an investigation do not contain any searched keywords.

## Conclusion

51. Based on the information above, I submit that there is probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

52 Affiant requests to be allowed to share this affidavit and the information obtained from this search with any government agency, to include state and local agencies investigating or aiding in the investigation of this case or related matters, and to disclose those materials as necessary to comply with discovery and disclosure obligations in any prosecutions from this matter.

21

Respectfully submitted,

Detective Kayla Johnson
Part Time TFO – FBI Safe Trails
Tulsa Police Department Robbery Unit

Subscribed and sworn to by phone on June  5  , 2024.

Susan E. Huntsman
UNITED STATES MAGISTRATE JUDGE

22

## ATTACHMENT A

### Property to be Searched

The property to be searched is a blue Apple iPhone in a black leather case, hereinafter the "Device." The Device is currently located at the Tulsa Police Department Robbery Unit Office

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.



**ATTACHMENT B**

**Particular Things to be Seized**

All records on the Device(s) described in Attachment A that relate to violations of 18 U.S.C. § 1951 Obstructing, Delaying, and Affecting Commerce by Robbery involving TERRANCE MORROW, including:

1. Records from May 3, 2024, to May 22, 2024, relating to communication with others as to the criminal offense(s) listed above; including incoming and outgoing voice messages; text messages; emails; multimedia messages; applications that serve to allow parties to communicate; all call logs; secondary phone number accounts, including those derived from Skype, Line 2, Google Voice, and other applications that can assign roaming phone numbers; and other Internet-based communication media;

2. Records from May 3, 2024, to May 22, 2024, relating to documentation or memorialization of the criminal offense(s) listed above, including voice memos, photographs, videos, and other audio and video media, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos, including device information, geotagging information, and information about the creation date of the audio and video media;

3. Records from May 3, 2024, to May 7, 2024, relating to the planning and execution of the criminal offense(s) above, including Internet activity, firewall logs, caches, browser history, and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered in any Internet search engine, records of user-typed web addresses, account information, settings, and saved usage information;

4. Application data from May 3, 2024, to May 22, 2024, relating to the criminal offense(s) listed above;

5. Threatening communications related to the criminal offense(s) listed above;

6. All bank records, checks, credit card bills, account information, and other financial records from May 3, 2024, to May 22, 2024. Records relating to financial data, to include bank records, checks, credit card bills, account information, and other financial records, electronically stored records showing proof of residence, proof of storage unit use and/or rentals, additional properties owned or documents reflecting stash houses, real estate transaction documents, rental agreements or documents, as well as automotive sale or purchase or financing documents, electronically stored documents purporting to indicate income or salaries received reflecting employment, hours worked, wages earned, withholdings, W-2 and W-4 forms, (blank or executed), state and federal tax returns or documents pertaining to the preparation thereof,

electronically stored records showing secret clientele lists, business associates, and diversification of wealth, United States Currency, any other electronically stored tangible items evidencing the obtaining, transfer, secreting, and/or concealment of assets and/or money, electronically stored records, documents, receipts, and/or negotiable instruments which evidence the purchase of negotiable instruments and/or the structuring of currency transactions to avoid the filing of currency transactions reports and/or the laundering of monetary instruments, electronically stored documents evidencing fruits, instrumentalities, monies, records, and notations, associated with the crime(s) listed above.]

7. Evidence of user attribution showing who used or owned the Device(s) at the time the things described in this warrant were created, edited, or deleted, such as logs, phone books, saved usernames and passwords, documents, and browsing history from May 3, 2024, to May 7, 2024;

8. All records and information from May 3, 2024, to May 7, 2024, related to the geolocation of the Device(s) and travel in furtherance of the criminal offense(s) listed above; and

9. All records and information related to the coordination, agreement, collaboration, and concerted effort of and with others to violate the criminal statutes listed above.

3

As used above, the terms "records" and "information" include all the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.